Ruffin-, C.
 
 5.
 

 The defendants took joint administration of the estate of S. Smitherman, who died intestate; and they instituted actions on two bonds, which the plaintiff gave to their intestate in his lifetime, and obtained judgments; and thereupon the plaintiff filed this bill in the Court of Equity for Moore County, for an injunction and to be relieved against the judgments. The defendants united
 
 i a an
 
 answer; and after replication, the plaintiff took a ■commission to take the deposition of a witness resident in Moore, and proceeded, in the absence of both of the defendants, to have it taken, after having given notice to the defendant Spencer alone, and without any notice to the other defendant, N. Smitherman. Upon the return of the commission and deposition, the Court ordered the deposition to be suppressed, upon the ground of the insufficiency of the notice. The plaintiff subsequently filed a petition to rehear the matter; and therein also stated, that the witness was the only one by whom he could prove the equity of his bill, and that the witness had died within ten days after the order was made, whereby it became impossible to take his deposition a second time. Upon the rehearing, the Court reversed the former order, and passed the deposition to be read on the hearing. From that decision the defendant appealed.
 

 The hardship on the plaintiff of losing his evidence by the death of the witness would incline us, as it induced his Honor, to admit the deposition, if it could be done without opening the door to a general mischief. But, we think, it caunot be done. The act of 1782, Rev. St. c. 32, s. 4, provides, that ‘f no such testimony” — by deposition — “shall be taken until at least twenty days’ notice of the time and place of taking the same shall be given to the opposite party.” The mode of executing a commission in private was thus abrogated; and it became the legislative policy to subject witnesses
 
 *68
 
 to the test of the presence of those against whom they testify, and to their cross-examination. This is a most important change in the proceedings of this Court, and in further-anee of the administration of justice in it. For which reason the Court ought not to restrain the operation of the words of the statute, so as to weaken their natural sense, but should interpret them liberally, if they were doubtful, so as to give the full benefit of the act to every person, whose interest can be affected by the testimony ot' the witness. The two defendants together constitute “ the opposite party,” and therefore, there must be notice to both. We are not aware, that it has ever before been held that, in a suit against two, a deposition may be taken on notice to one of them. It is against first principles, that a person should be concluded, when he has neither put an interrogatory to the witness, nor had an opportunity of doing so. If, indeed, the plaintiff here could go on and entitle himself to a decree against that defendant by himself, to whom he
 
 gave
 
 notice, we should see no objection to it. But the objection is to reading the evidence against the other defendant who had no notice. We think it cannot be read against him;. and if so, it can be read against neither. For the equity is set up in the bill on the alleged acts of the intestate, and not on those of the present defendants or either of them; and if the plaintiff could get a decree at all, it would, therefore, be against both of the defendants, enjoining any further proceedings on the judgments.
 

 Cases were cited in the argument, in which depositions had been allowed to be read, after the death of the witnesses, to prevent the defeating of justice. But those were cases of irregularity merely in the mode of taking the deposition, as if it had been written by the witness before-hand, instead of being written by the commissioner on the examination, or the like, and they have no application to the present question. If in England a commission were executed without affording the adverse party an opportunity of joining in it, and exhibiting cross-interrogatories, it is not to be supposed that a deposition thus taken, would, under any circumstances, be allowed to be read. That would not be harmless ir
 
 *69
 
 regularity, but would go to the substance of the evidence and the degree of faith to be yielded to it. So in this Statei we think, it is, if a deposition be taken without notice. The Court cannot decree upon an
 
 ex parte
 
 affidavit. The practice has always been to give notice to every party, or to have an order, that notice to one, or to the solicitor, should be sufficient.
 

 The opinion of the Court, therefore, is, that the order appealed from is erroneous, and must be reversed, and with costs in this Court; and that the first order, whereby the deposition of the witness was suppressed, must stand. And this must be certified accordingly to the Court of Equity below.
 

 Per Curiam, Ordered accordingly.